Good morning, may it please the court. My name is Jason Serra from Federal Defenders of San Diego. I represent Mr. Hernandez-Beltran. The district court in this case committed error when it denied the motions to dismiss the indictment issued by the January 2010 grand jury for the Southern District, and this court should vacate and remand for any one of three reasons. First, the court's confirmatory correct, that is, it's telling prospective grand jurors, quote, correct, that's the end of the quote for her, but correct, there's something that must have happened to bring the grand jury to the point of hearing a case. The lady said I'm aware of what brings the case here. She says I understand the process. And I could be fair, but for me, I get why they're here, you know. Something happened, she said. There's something that must have happened along the way to, you know, bring us to this point. Possibly something happened to have a grand jury called. I mean, they don't just get together because they like each other. Something happens, she said, and then there's a process, and it brings us here. And he says, right. I must say I don't really see any merit to that argument. I understand why Your Honor might think that to be a problem, but my concern is the response from the judge. I know. Of course we're going to presume. I don't mean to interrupt or overspeak. I don't want to get in trouble. You won't get in trouble with me. There's a negative pregnant in there. The issue isn't, you know, whether or not something happens. Of course we know something happens, but it's the response that garnered from the district court that's of concern here. It's the court's correct that creates the problem. The court should have said something different. And Judge Gonzales actually said that. Should this judge have said correct? Probably not. Would Judge Gonzales have said that? She said probably not. What the district court should have said instead of correct is, well, that's something for you to decide as the grand jury. But by saying correct, what the district court judge did was intrude upon the ---- What's something for you to decide as the grand jury? Whether this woman was aware of what brings cases here? Well, saying correct affirms several things. One, it affirms the fact that something happened, which I understand Your Honor's perspective on. But what the correct also does is, and I made this point in front of the district court, if we have conflicting eyewitness accounts or conflicting events as they're being recalled by agents or by eyewitnesses, what the correct does is it creates a suprematory on grand jurors that the government's witnesses, all right, got it right. That something happened. But what if one of these witnesses came up and said something contrary? It would have eliminated essentially the grand jury's discretion or at least affected their decision of who to believe and which account to take at value and what to base their decision on. And that's the problem. A confirmatory correct pushes or puts a finger on the scale here in favor of the government because it says, yes, something happened. There's evidence here. And that's inappropriate, completely improper. The Supreme Court's made clear that lower courts are to protect against the diminution of the presumption of innocence. And anything that can override the presumption has to come from evidence, not mere facts or situation, such as being presented to a grand jury. But by saying correct, the court is telling grand jurors, yes, something happened. So they're not starting, at least Mr. Hernandez-Beltran isn't starting with a clean slate in front of this panel. He's starting with the grand jurors thinking, okay, something happened and we're correct to presume it happened based on that statement by the district judge. That's pretty thin gruel. Well, I'll move on. And the next argument obviously is a combination of factors and how these combination of what we perceive to be erroneous instructions affected the grand jury's function, its probable cause determination. And here we have a sequence of instructions, which I began, of course, with the confirmatory correct, but I'll move on. And the first one that I note here is telling grand jurors that a magistrate frequently will have passed on a case and found probable cause, which will then bind the case over for the grand jury to consider. What that is telling grand jurors is we have a judge who grand jurors obviously are going to defer to and see someone who's a lawyer and very knowledgeable when it comes to the law and probably gets to see more facts than they get to see. And this is very different than was the circumstance in Carrudo. In Carrudo, the grand jurors were told some ambiguous things, but one thing they were told was infrequently the magistrate will find probable cause before it comes to you. And what was made clear to the grand jury, at least in Carrudo, was that it's your primary purpose and the remainder of instructions cured any potential ambiguity. Here we don't even have that ambiguity. Here they're told frequently the magistrate will have passed on probable cause and found it. So we're now telling grand jurors before they've heard any evidence that a judge has looked at the case, made a determination as to probable cause, i.e., enough facts exist to charge somebody, and essentially that tells or directs the grand jurors to find the same thing. When we take that and we combine it with the confirmatory correct as well as the prosecutorial inconium, this creates a real problem. The prosecutorial inconium tells grand jurors, look, you need to trust the public servants that come before you, in particular the U.S. Attorney's Office. When they come before you, they act with candor and honesty. How does it differ from Carrudo? Weren't they told the same thing in Carrudo? In Carrudo, they were told something different. In Carrudo, it was very ambiguous. They're told frequently suspects are arrested and taken before a magistrate judge who then holds a preliminary hearing to determine whether there is probable cause. If he finds that probable cause, the accused will direct something, will direct that the accused be held for the action of a grand jury. Right. But if you look at page 402 of Carrudo, this Court pointed out also that the grand jury was told in most circumstances cases are presented to a grand jury before the magistrate judge has ever called on to make a preliminary determination of probable cause. So that, combined with another instruction specifically telling them that their job, obviously, is to make the probable cause determination, that cured the error, according to this Court in Carrudo. We don't have that here. We don't have that curative that cleared it up. But we also don't have the necessary ambiguity that was the case in Carrudo, which may have lessened the prejudice caused by this statement. Here, there is no flip-flopping. The district judge tells grand jurors frequently a magistrate will pass on probable cause. And now you're doing the same thing. Now, honestly, a layperson in the position that they're in, especially when they're not told that they can reject the government's request to indict, in spite of probable cause, not even having been found by a magistrate, being given the prosecutorial emponium that they should trust the prosecutors who are candid and honest. And the answer is we can't expect them to do anything other than indict. They're essentially turned into a rubber stamp. So they're asked to do two things. What we're doing is we're asking them to question a judge, city magistrate, and their wisdom, and take a position contrary to esteemed prosecutors. And a layperson, honestly, would not be able to do that. And I think this court can remand. They can't remand based on one or two findings as a result of those instructions. One, I believe it's structural error. I think Mr. Hernandez is deprived of the traditional function. Your other one, you cannot expect candor, honest and good faith. You can expect candor, honest and good faith. Correct. Isn't that also – don't we also have a binding precedent on that? We do. But what we don't have is any precedent dealing with the cumulative error issue that I've raised here. The closest case we have is Navarro. But the case Cortez-Rivera and Navarro-Vargas didn't deal with these instructions as a whole. They dealt with them individually. There was no cumulative error analysis done in those cases. But you can't have a cumulative error if you've got no error in any of the particular ones. Well, what the court has said and what the court said in Navarro was the inconium, while perhaps unnecessary, wasn't unconstitutional. But what the court in Navarro did say, when it's combined with another instruction, it can inflate the problem another instruction might have or create additional error. And that's what we had there. That's why I thought this, combined with the confirmatory correct, inflamed that confirmatory correct. It really made it – extended its punctuation, essentially. In Navarro, obviously, the error was they're being told, you know, a prosecutor will present exculpatory evidence to the grand jury if any exists, combined with prosecutorial conium. This court felt that created a double assurance that if there were anything to help the accused in the case, they would hear about it. Here, the grand jurors are being told, these cases are rock solid because you're hearing them. You have an honest prosecutor and a judge who's already passed on it frequently. And that has to have an effect on a layperson who isn't familiar with the law and certainly influence their decision at the very least, and if not influence it, I think creates a substantial, you know, a grave doubt that it's free from the influence. I'm unsympathetic to your idea that you shouldn't be telling the grand jurors that the government attorney who presents it is telling you the truth. He's such a fine fellow. But that's what we said. I'd like to reserve a little time I do have for a moment. Thank you, Judge. Thank you. We'll hear from the government. May it please the Court. Michael Merriman of the United States. There was no error in Judge San Martino's instructions to the grand jury that's at issue in this case. First, I want to touch on the word correct and the context surrounding that word. Do you think there's anything you heard today wasn't adequately responded to in your brief? No, Your Honor. If the Court has any questions, I'd be happy to answer those. Thank you. I wonder if you could tell them to stop telling grand juries that whatever they hear from the government is correct because the government are all such fine people. They don't have to say that, you know. I will let them know as soon as I can, Your Honor. Oh, sure. I'll be thrilled when I hear it. I'll just read to you the problematic sentence. If past experience is any indication of what to expect in the future, then you can expect candor, honest, and good faith in matters presented by the government attorneys. Not just candor, good faith from the attorneys themselves, but in matters presented by the attorneys. I don't think you want to be in a position to say that to the grand jury. Maybe the case law will let you do it, but that just strikes me as a terrible thing to say. Because that is vouching for the honesty of what is being presented, not just for the good faith of the attorneys. Good faith in matters presented by. Do you understand the point? I do, Your Honor. And do you think it's a good idea to have that sentence? Well, I believe that it has been upheld by the circuit. That's not my question. It's not necessarily in the circuit. Well, I'm not going to speak to it. I think it's the best possible instruction, certainly to the circuit. You know, that's not my question either. Well, I'll tell you the story of my life. But I argued a case in the Supreme Court in which Archibald Cox, who had clerked for Justice Frankfurter, was a solicitor general. And Justice Frankfurter said to him, what's the government's position on this? Do you think it's fair and right? And he said, the government has no position on that. And Justice Frankfurter said to Mr. Cox, you're an officer of this court. I'd like to know what you think as an officer of the court. And Archibald Cox said, well, as an officer of the court, I don't think it's right. Now, that could be a lesson for all government attorneys. You could have the first opportunity to say, I can't speak for the government, but as an officer of the court, I think it's a lousy idea. But we won't make you say that. I'll just say that I hope to join the bench someday and give my own discussion. And I will say that if this sentence had been part of the instructions to the pettit jury, that's an immediate, obvious, what are you thinking about reversal? I mean, I can think of nothing cleaner in terms of vouching. Usually, vouching things are just their throwaways. I've yet to find a case where we found vouching. I mean, they exist, but I've never had one in 12 years. But if this were in front of the pettit jury, that's an immediate slam dunk reversal, it seems to me. I agree that it would be problematic. Again, that was not my point. I didn't say problematic. You said problematic. I tried to let you off the hook. Thank you. Do you have any rebuttals, officer? No. Thank you. Case argument is submitted. Next you will hear from, in the United States, Ms. Cora.
judges: Kozinski, Reinhardt, Fletcher